IN THE UNITED STATES DISCRIT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| COREY TUCKER, | ) |
| | ) |
| PLAINTIFF, | ) CASE NO. |
| | ) |
| VS. | ) |
| | ) HON. |
| UNITED WHOLESALE MORTGAGE, INC. | ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT

PLAINTIFF Corey Tucker, by and through his attorneys, CARLA D. AIKENS, P.L.C., submit the following Complaint against UNITED WHOLESALE MORTGAGE, INC.

## JURY DEMAND

COMES NOW PLAINTIFF Corey Tucker and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff Corey Tucker was a resident of Wayne County in the State of Michigan.

2. Defendant United Wholesale Mortgage, Inc., is a domestic for-profit

1

corporation, with a continuous and systematic place of business located at 585 South Boulevard East, Pontiac, Michigan and a registered address of 40600 Ann Arbor Road East Suite 201, Plymouth, Michigan.

## VENUE

3. Venue is proper in this Court, because the violations of Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. giving rise to Plaintiff's claims occurred in this district.

4. This action is brought in this Court on the basis of federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

5. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## STATEMENT OF FACTS

6. Plaintiff is an African American man who was employed by Defendant.

7. Plaintiff's employment began on or about December 20, 2021 with his last position at being Account Executive.

8. Shortly after his employment began, Plaintiff began to notice differential treatment within the workplace.

9. Specifically, Plaintiff was assaulted both physically and verbally by his Caucasian co-workers while at the workplace.

10. Upon both information and belief, Plaintiff reported the conduct to his supervisors and/or Defendant had reason to know about the conduct to which Plaintiff was being subjected.

11. Plaintiff's white co-workers would hurl insensitive as well as racist comments at Plaintiff based upon his status as a Black man.

12. Plaintiff's division lead, Kale Rigby, made many racial remarks while Plaintiff worked for the company.

13. Examples of these comments included stating that a Black manager (one of the only ones) "is Black, fit, and looks intimidating, but he's soft."

14. Plaintiff asked what his color had to do with anything, and he stated that Plaintiff was a "smooth talker" and told him to go back to his desk.

15. He further commented about another Black team lead that he was "stealing all my Black kids."

16. One colleague stated to Plaintiff that has to "suck d***" for loans, which Plaintiff understood to be a joke but also a serious comment regarding what would be required to make money there.

17. These comments occurred both in person and during virtual interactions with Plaintiff's white co-workers.

18. Plaintiff advised his supervisor, Paul, about his discomfort with a particular employee, who was supposed to be Plaintiff's mentor, who made personal comments to him and which did not sit well with him.

19. These comments included ones regarding ejaculation which Plaintiff did not want to hear and informed Paul of the same.

20. Paul stated that he wanted to know what was going on and did not want Plaintiff to feel upset, and that he wanted to find a solution.

21. A friend of the offensive employee, came and sat next to Plaintiff one day and stated that he was the employee's roommate, which was followed by a team lead named Kyle shouting "how's that going for you guys?"

22. Plaintiff further was told by his superior, John, that he had been leaving and walking around during "power blocks," which were times when Defendant wanted Plaintiff and others to make phone calls.

23. Plaintiff advised that he had gone to the bathroom and was not "walking around" or purposely skipping making calls.

24. Plaintiff explained to Defendant's agents that he was making a lot of calls and was not intentionally skipping making them.

25. His high volume was noticed by another colleague who commented that they had Plaintiff had done more calls in a short period than some people do in a day.

26. When Plaintiff started to bring up complaints about the treatment he received, he was discouraged or forbidden from reporting the conduct directly to the Team Member Service department.

27. On June 10, 2022, Plaintiff was shot in the face with a NERF gun at close range by a co-worker who was directed to do so by Plaintiff's manager, John, after there had already been building tensions within the group and with John, including uncomfortable comments made to him by his co-workers.

28. While it is considered a "toy," upon information and belief, individuals have been injured by NERF guns which can cause injuries to the eye including vision problems, internal bleeding of the eye, and swelling, among other injuries.

29. While his manager, John, laughed hysterically for an extended period of time, Plaintiff was extremely bothered and humiliated by the situation, which caused him to later be diagnosed with PTSD related to the situation.

30. Plaintiff reported the incident to TMS (human resources).

31. On June 27, 2022, a co-worker allegedly reported that Plaintiff was "walking around" even though he had witnesses indicating he was using the restroom.

32. When discussing the matter, another co-worker spoke up for :Plaintiff and vouched for his whereabouts, but Plaintiff's manager John, told the co-worker

5

to stay out of it and said that he was a "master of these four walls" and he "runs this."

33. Plaintiff took offense to the comments which he considered to be a reference to slavery, and stated that he wanted to go to TMS (Defendant's human resources regarding John's comments.

34. Just a few hours later, however, and after months of enduring this behavior, Plaintiff was terminated without warning by Vice President Eric Mojica for purportedly "walking around" during a "power block," though Plaintiff was in the restroom, as he had already stated to his supervisor.

35. Plaintiff asked if he could view the cameras, which Mojica declined.

36. At least one co-worker confirmed that they had gone to the bathroom during a "power block."

37. Upon information and belief, the co-workers who were not terminated for the same action were white.

38. Further, Plaintiff was told by another African American man about the politics as an African American man of trying to survive in a setting such as Defendant's workplace.

39. After he was fired, in approximately mid-July of 2022, Assistant Vice President Henry Gomez's son called Plaintiff's phone over 30 times after midnight, which he reported to police.

40. The difference between Plaintiff's treatment and the other employees' treatment was Plaintiff's race.

41. Plaintiff filed a charge with the EEOC on the basis of race.

42. The EEOC issued a notice of right to sue letter on September 11, 2023, and this lawsuit followed.

43. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I
## RETALIATION IN VIOLATION OF 42 USC § 1981

44. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

45. 42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

46. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

47. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African American, to the creation,

performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

48. Plaintiff engaged in activity protected by 42 USC § 1981 when he complained of and opposed unlawful racial discrimination.

49. The retaliation by Defendant that Plaintiff experienced included his termination, which broke the contract between the parties.

50. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

51. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

52. But for Defendant's unlawful discrimination against Plaintiff for opposing racial discrimination, Plaintiff would not have suffered damages as set forth herein including his termination.

53. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about his future,

physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

54. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

55. 42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

56. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

57. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

58. The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included his termination, which broke the contract between the parties.

59. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

60. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

61. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**COUNT III**
**HARRASMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")**

62. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

63. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

64. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's skin color.

65. A respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

66. Moreover, a respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct those Plaintiffs' daily work activities, as alleged in the statement of facts.

67. Plaintiff is an African-American man, and, as a result, is a member of a protected class pursuant to Title VII.

68. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as set forth in the facts section above..

69. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

70. Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed

conduct or communication, including but not limited to subjecting her to worse treatment than her colleagues, on the basis of her race.

71. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

## COUNT IV
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

72. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

73. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

74. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

75. Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to ELCRA.

76. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

77. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

78. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

79. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

80. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## RETALIATION IN VIOLATION OF TITLE VII

81. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

82. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

83. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

84. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

85. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff reported his manager's racially-charged comments and the assault that the manager encouraged.

86. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

87. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, up to and including termination.

88. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

89. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

90. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

91. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

92. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## RETALIATION IN VIOLATION OF THE ELCRA

93. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

94. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

95. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

96. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

97. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, when Plaintiff protested and reported the issues to

human resources regarding racially-charged comments and the assault he experienced.

98. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

99. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, up to and including termination.

100. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

101. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

102. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

103. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

104. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII
## HOSTILE WORKPLACE EVIRONMENT IN VIOLATION OF TITLE VII
## (RACE)

105. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

106. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, Title VII.

107. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity, as alleged in the statement of facts.

108. Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

109. Plaintiff's supervisors and coworkers routinely made racist or derogatory comments against the Plaintiff and even physical harassed him on other occasions with no threat of repercussion.

110. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving, made the situation untenable.

111. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

112. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

113. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

114. Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT VIII
### HOSTILE WORKPLACE EVIRONMENT IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

115. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

116. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

117. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiffs daily work activity, as alleged in the statement of facts.

118. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

119. Plaintiff's supervisors and coworkers routinely made racist or derogatory comments against the Plaintiff and even physical harassed him on other occasions with no threat of repercussion.

120. Moreover, Plaintiffs continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving, made the situation untenable.

121. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiffs employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

122. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

123. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

124. Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, Corey Tucker, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: December 8, 2023

Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ *Carla D. Aikens*
Carla D. Aikens (P69530)
Austen J. Shearouse (P84539)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
austen@aikenslawfirm.com
*Attorneys for Plaintiff*